**IN THE UNITED STATES DISTRICT COURT**

**FOR THE NORTHERN DISTRICT OF GEORGIA**

**ATLANTA DIVISION**

| | |
|---|---|
| SHANTORRIA HERRING, individually and as the Personal Representative of the Estate of Karter Breon Smith, Deceased,<br><br>Plaintiffs,<br><br>v.<br><br>TESLA, INC.,<br><br>Defendant. | **CIVIL ACTION**<br><br>**Case No.: ______________________**<br><br>**JURY TRIAL DEMANDED** |

## COMPLAINT FOR DAMAGES AND WRONGFUL DEATH

COMES Now, Shantorria Herring, individually and in her capacity as the Personal Representative of the Estate of her son, Karter Breon Smith, and files this, her Complaint for Damages and Wrongful Death, showing the Court as follows:

## PARTIES

1. Plaintiff Shantorria Herring is a citizen of the State of Florida who resides in Leon County. Ms. Herring appears herein as the Plaintiff, individually and as the Personal Representative of the Estate of her son, Karter Breon Smith.

2. On May 21, 2025, the Probate Court of Leon, County, Florida appointed Ms. Herring as the Personal Representative of the Estate of Karter Breon Smith, as such, Ms. Herring brings this action pursuant to O.C.G.A. §§ 51-4-4 and 51-4-5 to recover the full value of the life of her decedent as well as damages for injuries he sustained and expenses he incurred.

3. At all times relevant hereto, Plaintiff's decedent, Karter Breon Smith resided at 3117 Arrow Wood Lane, Leon County, Tallahassee, Florida 32305.

4. At all times relevant hereto, decedent's father, Margarrett Breon Smith was the owner of a 2021 Tesla Model 3 Sedan, bearing VIN: 5YJ3E1EB5MF079638 (hereinafter referred to as the "Tesla Model 3", or "subject vehicle"), which is the subject of this lawsuit. On or about December 30, 2021, Defendant Tesla Inc. (hereinafter "Tesla") delivered the Tesla Model 3 into the stream of commerce in the State of Georgia.

5. Defendant Tesla is a business corporation that exists under the laws of the State of Delaware. Tesla's principal place of business is located at 1 Tesla Road, Austin, Texas 78725. Tesla may be served a summons and copy of Plaintiff's Complaint through its registered agent for service of process, The Corporation Company which is located at 410 Peachtree Parkway, suite 4245, Cumming, Georgia 30041.

6. At all times relevant hereto, Tesla has been and continues to market and sell Tesla vehicles and carry-out continuous and substantial business in the state of Georgia. Defendant Tesla offered for sale and delivered its products to consumers in Florida, including to Plaintiff's decedent's father.

7. Defendant Tesla designs, develops, manufactures, tests, markets, distributes, sells, and leases vehicles under the brand name "Tesla." The defendant provides after-sale products to vehicles it sells including periodic over-the-air updates for its Advanced Driver Assistance systems ("ADAS") software. Tesla was the designer, manufacturer and seller of the 2021 Tesla Model 3 Sedan that is the subject of this lawsuit.

## JURISDICTION AND VENUE

8. This Court may exercise jurisdiction of the subject matter of this case pursuant to its diversity jurisdiction under 28 U.S.C. § 1332 because the value of the matter in controversy exceeds the sum of $75,000, exclusive of interest and costs. There is complete diversity between the parties.

9. At all times relevant hereto, Defendant Tesla has and continues to conduct business throughout the State of Georgia and owns and operates multiple retail stores and service centers in various locations. By and through its employees and agents, defendant Tesla carries out substantial marketing activities including but not limited to:

a. Selling and/or delivering defective motor vehicles in the State of Georgia.

b. Selling, distributing, and servicing Tesla vehicles and their component parts and systems to or for persons, firms and/or corporations at its Tesla stores and service centers. Such Tesla vehicles were used by consumers in the ordinary course of commerce and trade.

c. The acts or omissions of said Defendant caused injuries to persons in the state of Georgia, including Plaintiff's decedent, Karter Breon Smith.

d. By engaging in the activities in Georgia to promote the sale, use, and distribution of Tesla vehicles, including the 2021 Tesla Model 3 which is the subject of this Complaint.

10. Venue is proper in this Court pursuant to U.S.C. § 1391 because Defendant Tesla has sufficient minimum contacts with the State of Florida and intentionally availed itself of the markets within said state through its Tesla Stores and Service Centers, and through the promotion, sale, marketing, and distribution of Tesla vehicles.

## PERTINENT BACKGROUND INFORMATION

11. In 2014, Defendant Tesla began equipping vehicles with Advanced Driver Assistance systems (hereinafter "ADAS") technology.

Specifically, Tesla began equipping vehicles with hardware that was intended to

allow the vehicles to automate some steering, braking, and acceleration functions, although the software to control those functions was not yet available.

12. Based on publicly available information, in or about 2014 or 2015, Tesla changed the name of its ADAS to "Autopilot" because Tesla officers and directors believed the public would associate this term with truly self-driving cars, and that the perception Tesla was making self-driving vehicles would increase sales, attract investments, and drive up Tesla's stock price.

13. As a result, at all times relevant hereto, Tesla marketed its ADAS technology under various names, including "Autopilot," "Enhanced Autopilot," "Full Self-Driving Capability," and/or "Full Self-Driving Supervised," all of which intentionally-and falsely-imply that the vehicles equipped with such software can operate autonomously with little to no driver supervision, responsibility, and control, including during emergency driving situations.

15. In October 2015, Tesla released its version 7.0 software, which enabled "Autopilot" on Model S vehicles. By December 2015, Tesla's owner and CEO, Elon Musk, stated publicly that Tesla vehicles would have complete autonomy and drive themselves within about two years. In April of 2019, Defendant Tesla made autopilot a standard feature on all Tesla models, including the Model 3.

16. In January 2016, Elon Musk publicly announced that "Autopilot" was "probably better" than a human driver. He further represented that Tesla vehicles would be able to drive significantly better than humans within two to three years, and that within approximately two years drivers would be able to use Tesla's "Summon" feature, which allows drivers to remotely instruct their vehicle to drive to a specified location or summon a vehicle from the other side of the country.

17. As a result of the above representations, and others, thousands of Tesla drivers have relied on Tesla's ADAS technology as though it were capable of safe, fully autonomous self-driving with minor software updates when in fact it is incapable of safely handling a variety of routine roadway scenarios without driver input, and can become confused by a number of factors There have been numerous reports that Tesla vehicles have departed the roadway, and crashed into other vehicles and stationary objects after accelerating without driver input.

18. Since 2016, Tesla has touted that "the safety of its vehicles" is much greater when its vehicles are operated on Autopilot versus when Autopilot is off. In addition to its affirmative representations, Tesla responded to consumer reports about problems with its "Autopilot" feature, including, but not limited to crashes, unintended acceleration, improper lane changes, and unintended braking, to name just a few, by falsely reassuring customers that the "Autopilot" feature worked as intended.

19. There have been a number of crashes and deaths involving "Autopilot" mode and malfunctions thereof reported to the National Highway Transportation Safety Administration (NHTSA). Upon information and belief, as discovery may show, the systems do not work well and may cause crashes or fail to properly respond to programmed circumstances which should cause the ADAS to provide protection.

20. The subject 2021 Tesla Model 3 was equipped with ADAS features, which Tesla refers to as "Autopilot" and "Full Self-Driving Capability." According to Tesla, Inc.'s Owner's Manual (website), the Tesla Model 3 included these features:

- Automatic Emergency Braking: Detects cars or obstacles that the vehicle may impact and applies the brakes accordingly.
- Auto Lane Change
- Forward Collision Warning: Warns of impending collisions with slower moving or stationary vehicles.
- Side Collision Warning
- Obstacle Aware Acceleration: Automatically reduces acceleration when an obstacle is detected in front of your vehicle.
- Lane Departure Avoidance: Applies corrective steering to keep the vehicle in the intended lane.

- Emergency Lane Departure Avoidance: Steers the vehicle back into the driving lane when it detects the vehicle is departing its lane and there could be a collision.
- Autosteer: Assists in steering within a marked travel lane.
- Full Self-Driving (Supervised)

21. The subject Tesla Model 3 was purportedly designed and equipped with the afore-described Auto-Pilot safety features and "Collision Avoidance Assist" features including Forward Collision Warning, Automatic Emergency Braking and Obstacle-Aware Acceleration. Defendant Tesla provided owners with representations of the performance and effectiveness of these safety features. Consumers, including the decedent’s father, read and relied upon these representations.

22. Based upon information and belief, the Tesla Model 3 in question was designed to also include safety features such as "In-Path Stationary Object (IPSO) Braking and Pedal Misapplication Mitigation,” which purportedly reduces the risk of unintended acceleration caused by misapplication of the accelerator pedal.

23. At all relevant times, Defendant Tesla had advertised and marketed its vehicles in a manner that has caused consumers, including Margarett Smith, to believe that Tesla vehicles crashworthy, stating:

> Model S, Model 3, Model X and Model Y have achieved among the lowest overall probability of injury of any vehicles ever tested by the U.S. government's New Car Assessment Program. Much of this has to do with the rigid, fortified structure of the Battery Pack that is mounted to the car's floor, which provides a vehicle with exceptional strength, large crumple zones, and a uniquely low center of gravity. Because of their strength, Tesla's Battery Packs rarely incur serious damage in accidents.
> https://www.tesla.com/VehicleSafetyReport

24. Defendant Tesla has warranted that its vehicles are crashworthy in typical highway crashes.

25. Tesla's failure to produce the subject Model 3 with the ability to withstand reasonable collision forces and with adequate occupant protection systems is inexplicable, negligent, reckless, and rendered the vehicle not crashworthy, defective and unreasonably dangerous for its intended and expected use.

26. Defendant Tesla failed to provide adequate warnings to consumers of the dangers of the subject Model 3 vehicle and instead, misrepresented the vehicle as safe for its intended purposes.

27. Due to defects in the design and/or manufacture of the systems, components or parts (as detailed below), safety features in the 2021 Tesla Model 3 failed to activate or did not correctly operate to maintain the subject Tesla Model 3 within its lane of travel, failed to detect that the vehicle was departing its lane, did not steer the vehicle back into the driving lane, did not apply corrective steering to keep the vehicle in its intended lane, failed to detect and warn of the stationary object

in the path of the vehicle (a tree), caused or failed to reduce the risk of unintended acceleration or failed to activate the brakes to bring the vehicle to a stop, and/or failed to provide audible warnings and autonomous emergency braking to stop the vehicle and prevent it from crashing into the tree.

28. As a result of the defective and unreasonably dangerous design of the 2021 Tesla Model 3, the vehicle failed to remain in its lane of travel, departed the highway and failed to detect, warn, and apply emergency braking to and prevent the vehicle from colliding with the tree.

29. As set forth in detail below, the collision that caused the deaths of the Plaintiffs decedent and his father, and the losses and damages sustained by the Plaintiff were the result of the defective design, ADAS, and other features of the 2021 Tesla Model 3.

## FACTS REGARDING THE COLLISION

30. Plaintiff incorporates and restates the foregoing paragraphs by reference as if the same were fully set forth herein.

31. On December 23, 2024, the decedent, Karter Breon Smith, was a passenger in the subject Tesla Model 3 traveling on GA Hwy, 35 in Thomas County, Georgia when the vehicle abruptly departed the road, struck a tree and burst into flames. The driver of the Tesla was Karter's father, Margarrett Smith.

32. The movement of the Tesla Model 3 occurred-according to the Tesla EDR records-as the "Accelerator Pedal (%)" went from 0.0 (with a speed of 63 mph) to 100.0 without any significant change in vehicle speed and without any reported "Service Brake" recording.

33. Although an occupant from another vehicle rushed to the scene of the crash, he was unable to assist Karter and his father from the vehicle because the handles on the doors were inoperable. Consequently, both occupants burned to death in the thermal runaway and fire that occurred after impact.

## COUNT I

## STRICT LIABILITY- DEFECTIVE DESIGN, MANUFACTURE AND FAILURE TO WARN

34. Plaintiff incorporates and restates the foregoing paragraphs by reference as if said paragraphs are fully set forth herein with respect to Count I of her Complaint for Damages.

35. Prior to the death of Plaintiff's son, Karter Breon Smith, Defendant Tesla designed, manufactured, and placed the subject 2021 Tesla Model 3 into the stream of commerce in the State of Georgia in a defective condition that was unreasonably dangerous for its ordinary and intended purposes.

36. In particular, the "Autopilot" and/or "self-driving "system features and of the subject vehicle were improperly designed, were defective, failed, and caused the vehicle to abruptly depart the highway and strike a tree.

37. To the extent that the Autopilot and/or self-driving features of the Tesla Model 3, including, but not necessarily limited to, the lane departure avoidance feature, the auto-steer feature, and the automatic emergency braking feature were engaged, they were either defectively designed or malfunctioned and caused the crash that killed Plaintiff's son.

38. Moreover, the Autopilot/self-driving system and its constituent features were not sufficiently developed or tuned to allow the vehicle to be operated in a safe manner and as expected by consumers, including the father of Plaintiff's decedent.

37. Had its Autopilot system and its constituent features on the subject vehicle been properly designed, manufactured, and tuned, the subject vehicle would have remained in its lane of travel, would not have departed the highway, and would not have struck the tree and caused a thermal runaway that resulted in the death of Plaintiff's son.

39. In addition to its Autopilot system, the lithium ion battery and electrical power storage system of the subject vehicle (herein "Battery Pack") had been defectively designed, manufactured, and placed into the stream of commerce in the State of Georgia prior to the crash that forms the basis of this lawsuit.

40. In particular, the Battery Pack of the Tesla Model 3 was designed in a manner that was not crashworthy and was prone to cause a post-collision thermal runaway and fire.

41. Despite the fact that it knew that its Battery Pack was vulnerable to post-collision thermal runaway and fire, Defendant Tesla failed to design that system in such a way that it was reasonably crashworthy and safe, including the design and implementation of adequate crash protection and an adequate fire suppression system.

42. Had the Battery Pack of the subject vehicle not been designed in a defective condition that was unreasonably dangerous for its intended purpose, Plaintiff's son would not have been killed in the post-collision thermal runaway and fire that occurred on December 23, 2024.

43. In addition to the Autopilot system and its constituent features, and the Battery Pack, the door locking mechanism of the subject Tesla Model 3 were designed and manufactured in a defective condition that was unreasonably dangerous for its intended use.

44. Prior to the death of Plaintiff's son, Defendant Tesla designed and manufactured the door locking mechanisms on the subject vehicle in such a way that they prevented the doors from being opened from the outside in the event of a crash like the one that occurred December 23, 2024. The door locking mechanisms rely

exclusively on electrical power and have no mechanical backup. Therefore, the failure or compromise of the vehicle's Battery Pack renders the door latches inoperable.

45. Despite its knowledge of the defects described in the foregoing paragraphs, Defendant Tesla failed to warn consumers, including the father of Plaintiff's decedent, that the Tesla Model 3 was not crashworthy and was unreasonably dangerous in the foreseeable event of a crash.

46. Rather than warnings about its safety record, Tesla disseminated marketing information to the consuming public which represented that the Model 3 and other vehicles in its lineup were crashworthy safe for their intended purposes.

## COUNT II

## NEGLIGENT DESIGN, MANUFACTURE AND FAILURE TO WARN

47. Plaintiff incorporates and restates the foregoing paragraphs by reference as if said paragraphs are fully set forth herein with respect to Count II of her Complaint for Damages.

48. Prior to the death of Plaintiff's son, Karter Breon Smith, Defendant Tesla designed, manufactured, and placed the subject 2021 Tesla Model 3 into the stream of commerce in the State of Georgia in a defective condition that was unreasonably dangerous for its ordinary and intended purposes.

49. In particular, the "Autopilot" and/or "self-driving" system features of the subject vehicle were improperly designed, were defective, failed, and caused the vehicle to depart the highway and strike a tree.

50. To the extent that the Autopilot and/or self-driving features of the Tesla Model 3, including, but not necessarily limited to, the lane departure avoidance feature, the auto-steer feature, and the automatic emergency braking feature were engaged, they were either defectively designed or malfunctioned and caused the crash that killed Plaintiff's son.

51. Moreover, the autopilot/self-driving system and its constituent features were not sufficiently developed or tuned to allow the vehicle to be operated in a safe manner and as expected by consumers, including the father of Plaintiff's decedent.

52. Had the autopilot system and its constituent features on the subject vehicle been properly designed, manufactured, and tuned, it would have remained in its lane of travel, would not have departed the highway, and would not have struck the tree and caused a fire that resulted in the death of Plaintiff's son.

53. In addition to its autopilot system, the battery and electrical power storage system of the subject vehicle had been defectively designed, manufactured, and placed into the stream of commerce in the State of Georgia prior to the crash that forms the basis of this lawsuit.

54. In particular, the Battery Pack of the Tesla Model 3 was designed in a manner that was not crashworthy and was prone to cause a post-collision thermal runaway.

55. Despite the fact that it knew that its Battery Pack were vulnerable to post-collision thermal runaway, Defendant Tesla failed to design that system in such a way that it was reasonably crashworthy and safe, including the design and implementation of adequate impact protection and a adequate fire suppression system.

56. Had the Battery Pack of the subject vehicle not been designed in a defective condition that was unreasonably dangerous for its intended purpose, Plaintiff's son would not have been killed in the post-collision thermal runaway and fire that occurred on December 23, 2024.

57. In addition to the Autopilot system and its constituent features, and the Battery Pack, the door locking mechanisms of the subject vehicle were designed and manufactured in a defective condition that was unreasonably dangerous for its intended use.

58. Prior to the death of Plaintiff's son, Defendant Tesla designed and manufactured the door locking mechanisms on the subject vehicle in such a way that they prevented the doors from being opened from the outside in the event of a crash like the one that occurred December 23, 2024.

59. Despite its knowledge of the defects described in the foregoing paragraphs, Defendant Tesla failed to warn consumers, including the father of Plaintiff's decedent, that the vehicle was not crashworthy and was unreasonably dangerous in the foreseeable event of a crash.

60. Rather than warnings about its poor safety record, Tesla disseminated marketing information to the consuming public which represented that the Model 3 and other vehicles in its lineup were safe for their intended purposes.

## COUNT III

## BREACH OF EXPRESS AND IMPLIEDWARRANTIES OF FITNESS FOR A PARTICULAR PURPOSE AND MERCHANTABILITY

61. Plaintiff adopts and incorporates by reference all of the forgoing language of this Complaint as if fully set forth herein with respect to Count III of Plaintiff's Complaint.

62. Defendant Tesla, through its advertising, promotional materials, labeling, and representations, expressly warranted and affirmed that the subject Tesla Model 3 was safe for its intended uses and purposes.

63. As a result of the way in which they were made, Defendant Tesla's representations became the basis of the bargain that was struck when the subject vehicle was purchased by consumers.

64. Defendant Tesla made express warranties that extended beyond the delivery of the subject vehicle and expressly and impliedly warranted that it would be safe for its intended, expected, and foreseeable purposes and uses.

65. Moreover, as a merchant selling automobiles in the State of Georgia, Defendant Tesla implied that the subject vehicle was merchantable and fit for the ordinary and expected purposes for which it had been advertised.

66. Notwithstanding its representations to the consuming public, including the father of Plaintiff's decedent, Defendant Tesla breached the express and the implied warranties of fitness for a particular purpose and merchantability that it made by placing the Tesla Model 3 into the stream of commerce in a defective condition that rendered it unreasonably dangerous in its ordinary, expected and foreseeable uses as a passenger vehicle.

67. Prior to December 23, 2024, Defendant Tesla knew, or should have known, that the subject vehicle was, in many ways, defective and posed a risk of serious harm and/or death to consumers, like Margarett Smith and Plaintiff's son, Karter.

68. In reasonable reliance upon the express and implied warranties of fitness for a particular purpose and merchantability made by Defendant, Margarret Smith, the father of Plaintiff's son, purchased and used the subject vehicle, believing the representations made by Defendant.

69. As an actual and proximate consequence of Defendant Tesla's breach of its express and implied warranties of fitness for a particular purpose and of merchantability, Plaintiff's son, Karter Breon Smith, was grievously injured and died after the defective condition of the subject vehicle caused it to depart the highway, crash into a tree, and burst into flames. Immediately prior to the collision, Plaintiff's decedent suffered pre-impact shock and fright and mental and emotional distress.

70. As a result of the collision itself and the ensuing run thermal runaway and fire, Plaintiff's decedent experienced physical pain and suffering until the moment of his death.

## COUNT IV

## VIOLATION OF THE GEORGIA FAIR BUSINESS PRACTICES ACT

71. Plaintiff adopts and incorporates by reference all the foregoing language of this Complaint as if said language is set forth fully herein with respect to Count IV of her Complaint for damages.

72. Margaret Brian Smith, the father of Plaintiff's decedent, was a "consumer" as defined by O.C.G.A. § 10-1-392, the Georgia Fair Business Practices Act, in that he acquired/purchased, other than for purposes of resale, the 2021 Tesla Model 3 at issue in this action.

73. Defendant Tesla’s actions in marketing, advertising, and otherwise making public representations about the subject vehicle constituted “trade” as defined by O.C.G.A. § 10-1-392, as said actions created, altered, repaired, furnished, made available, provided information about, or directly or indirectly solicited or offered for or effectuated the sale, lease, or transfer of consumer goods such as the subject vehicle.

74. At all times relevant to this action, Defendant Tesla knew, or in the exercise of reasonable care, should have known of the unreasonably dangerous nature of the subject vehicle.

75. At all times relevant hereto, Defendant Tesla, through its labeling, promotion, and marketing of the subject vehicle, intentionally misrepresented material facts in order to mislead consumers that the vehicle was safe for its intended and expected purposes.

76. Defendant Tesla misled consumers regarding the substantial risks of serious injury or death related to the uncrashworthy nature of the subject vehicle.

77. Defendant Tesla falsely represented that its vehicles, including the 2021 Tesla Model 3, had been designed and manufactured with advanced features that made it safe for its intended and expected purposes.

78. Defendant Tesla’s act of misleading consumers constituted a misrepresentation that was an unlawful trade practice under O.C.G.A. § 10-1-393.

79. Plaintiff's decedent and his father acted in reasonable reliance upon Defendant Tesla's unlawful trade practices of making misrepresentations and omissions to consumers.

80. Had Defendant Tesla not engaged in the deceptive conduct described herein, reasonable consumers like Margaret Brian Smith would not have acquired/purchased the subject vehicle.

81. Knowledge of material information regarding the true condition of the subject vehicle would have highly impacted Mr. Smith's decision to acquire/purchase the subject vehicle

82. As a direct and proximate consequence of the unlawful trade practices of Defendant Tesla, in violation of the Georgia Fair Business Practices Act, O.C.G.A. § 10-1-393, Plaintiff suffered and sustained and will continue to suffer and sustain damages for which she is entitled to recover, including but not limited to compensatory damages, consequential damages, treble or per-violation damages, interest, costs, attorney's fees, and all other damages cognizable under O.C.G.A. § 10-1-393.

83. As a result of Defendant's acts and omissions, Plaintiff's son was horribly injured, experienced mental, emotional, and physical pain and suffering, and died. As the mother of Karter Breon Smith, and the personal representative of his estate,

Plaintiff incurred funeral and burial expenses, as well as attorney's fees and the expenses of litigation.

## COUNT V

## WRONGFUL DEATH

84. Plaintiff adopts and incorporates by reference all of the foregoing language of this complaint as if fully set forth herein with respect to Count IV of her Complaint for Damages.

85. As an actual and proximate consequence of Defendant Tesla's act of placing the Tesla Model 3 into the stream of commerce in the State of Georgia in a defective condition that was unreasonably dangerous for its ordinary, intended, and foreseeable purposes, Plaintiff's son, Karter Breon Smith, was grievously injured and died.

86. As his surviving parent, Plaintiff is entitled under O.C.G.A. §§ 51-4-4, 51-4-5 and 19-7-1 to recover the full value of the life of Karter Breon Smith.

87. Under O.C.G.A. §§ 51-4-5, Plaintiff is entitled, as the Personal Representative of his Estate, to recover damages for the pre-impact shock and fright and the mental, physical, and emotional pain and suffering experienced by Karter Breon Smith, as well as necessary expenses resulting from his injury and death, including funeral and burial expenses.

## COUNT VI

## PUNITIVE DAMAGES

88. Plaintiff adopts and incorporates by reference all of the foregoing language of this Complaint as if fully set forth herein with respect to Count V of her Complaint for Damages.

89. The conduct of Defendant Tesla, as described in the preceding paragraphs of this Complaint, was willful, wanton, oppressive, and evidence that entire want of care which raises the presumption of conscious indifference to the consequences.

90. Accordingly, Plaintiff is entitled to recover punitive damages from Defendant Tesla under O.C.G.A. §§ 51-12-5.1.

## COUNT VII

## ATTORNEYS' FEES AND EXEPNSES OF LITIGATION

91. Plaintiff adopts and incorporates by reference all of the foregoing language of this Complaint as if fully set forth herein with respect to Count VI of her Complaint for Damages.

92. Defendant Tesla's conduct in connection with the death of Plaintiff's son, Karter Breon Smith, has caused Plaintiff to incur unnecessary trouble and expense by forcing her to file this lawsuit to recover damages related to the fatal vehicle collision of December 23, 2024.

93. Accordingly, Plaintiff is authorized to recover expenses of litigation, including reasonable attorney fees, from Defendant Tesla pursuant to O.C.G.A. §§ 13-6-11.

## PRAYER FOR RELIEF

Wherefore, Plaintiff requests that she be granted the following relief:

(a) That a summons and a copy of her Complaint for Damages be served upon Defendant Tesla;

(b) That she have a trial by jury as to each and every appropriate issue;

(c) That she recover a sum equal to the full value of the life of Karter Breon Smith;

(d) That she recover special damages for the funeral and burial expenses of her decedent, in an amount not less than $15,500.00

(e) That she recover general compensatory damages for the pre-impact shock and fright, as well as the mental, emotional, and physical pain and suffering experienced by her decedent prior to his death;

(f) That she recover all damages allowed under O.C.G.A. § 10-1-393, the Georgia Fair Business Practices Act;

(g) That she be awarded punitive damages in an amount sufficient to deter similar conduct by Defendant Tesla in the future;

(h) That judgement be entered against Defendant Tesla;

(i) That she recover reasonable attorney's fees and litigation expenses pursuant to O.C.G.A. § 13-6-11;

(j) That all costs of this action be cast against Defendant Tesla; and

(k) That she receive such other and further relief as this Court deems just and proper.

This 31st day of March 2026.

**SEAY/FELTON, LLC**

*/s/ Quinton Seay*
Quinton S. Seay
Georgia Bar No. 634025
Eugene Felton, Jr.
Georgia Bar No. 257840
*Attorneys for Plaintiff*

260 Peachtree Street, N.W.
Suite 1001
Atlanta, Georgia 30303
(404) 902-6444
(770) 800-0507 (Fax)
qseay@sftriallawyers.com
efelton@sftriallawyers.com

**PARKS LAW, LLC**

*/s/Daryl D. Parks*
Daryl D. Parks
Florida Bar No. 993952
*Attorneys for Plaintiff*

240 N. Magnolia Drive
Tallahassee, Florida 32301
(850)251-6400
(850)224-6679 (Fax)
dparks@darylparks.com